UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MUSCOGEE CREEK INDIAN FREEDMEN
BAND, INC., *et al.*,
    Plaintiffs

v.

DAVID BERNHARDT[1], *et al.*,
    Defendants

Civil Action No. 18-1705 (CKK)

**MEMORANDUM OPINION**
(May 6, 2019)

      Plaintiffs are individuals and a collection of persons whose lineal ancestors were Creek Nation Freedmen and citizens of the Muscogee Creek Nation ("MCN"). Plaintiffs contend that under the Creek Treaty of 1866, they should have the rights and privileges of MCN citizens, regardless of their "blood status." Plaintiffs further contend that, despite the Creek Treaty of 1866, they have been wrongfully denied MCN citizenship. Accordingly, Plaintiffs brought this lawsuit requesting declaratory and injunctive relief to secure the rights and privileges of MCN citizenship. In response to Plaintiffs' suit, Defendants David Bernhardt and the United States Department of the Interior ("federal Defendants") filed a Motion to Dismiss, contending that dismissal is appropriate because the statute of limitations has run on Plaintiffs' claims. Additionally, Defendant James Floyd, the Principal Chief of the MCN, filed a Motion to Dismiss, raising various grounds for dismissal.

      Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court will GRANT Defendant Floyd's Motion to Dismiss and DENY WITHOUT

---

[1] Pursuant to Fed. R. Civ. P. 25(d), David Bernhardt is substituted in his official capacity as United States Secretary of the Interior.

[2] The Court's consideration has focused on the following documents:

1

PREJUDICE federal Defendants' Motion to Dismiss. The Court finds that Plaintiffs have failed to exhaust their tribal remedies. Plaintiffs do not allege that they ever applied for citizenship and were denied citizenship by the MCN. Accordingly, the Court will DISMISS WITHOUT PREJUDICE Plaintiffs' Complaint in order to allow Plaintiffs to exhaust their tribal remedies.

## I. BACKGROUND

The Court concludes that Plaintiffs' Complaint should be dismissed without prejudice based on Plaintiffs' failure to exhaust their tribal remedies by applying for citizenship and appealing any adverse determinations. Accordingly, the Court's explanation of the factual background will focus on the details relevant to the discussion of this issue.

In 1866, the MCN and the United States executed a treaty which provided that:

> [I]nasmuch as there are among the Creek many persons of African descent…it is stipulated that hereafter these persons, lawfully residing in said Creek country, under their laws and usages, or who have been thus residing in said country, and may return within one year from the ratification of this treaty, and their descendants and such others of the same race as may be permitted by the laws of said Nation to settle within the limits of the jurisdiction of the Creek Nation as citizens [thereof], shall have and enjoy all the rights and privileges of native citizens, including an equal interest in the soil and national funds; and the laws of said Nation shall be equally binding upon and give equal protection to all such persons

---

- Mem. of Points and Authorities in Support of Fed. Defs.' Mot. to Dismiss ("Fed. Defs.' Mot."), ECF No. 20-1;
- Pls.' Opp'n to the Fed. Defs.' Mot. to Dismiss ("Pls.' Opp'n to Fed. Defs."), ECF No. 23;
- Reply Mem. in Support of Fed. Defs.' Mot. to Dismiss ("Fed. Defs.' Reply"), ECF No. 26;
- Def. James Floyd's Mot. to Dismiss Pls.' Am. Compl. ("Def. Floyd's Mot."), ECF No. 21;
- Pls.' Opp'n to Principal Chief Floyd's Mot. to Dismiss ("Pls.' Opp'n to Def. Floyd"), ECF No. 25; and
- Def. James Floyd's Reply in Support of Mot. to Dismiss Pls.' Am. Compl. ("Def. Floyd's Reply"), ECF No. 27.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

Am. Compl., ECF No. 12, ¶ 38 (quoting Treaty of 1988, Art. 2). In 1887, Congress passed the Dawes Act of 1887. Pursuant to the Dawes Act as well as other acts of Congress, the MCN created the "Dawes Rolls," which were citizenship lists dividing members into the "Creek Nation Creek Roll," allegedly comprised of Creek citizens with Creek blood and the "Creek Nation Freedmen Roll," allegedly comprised of Creek citizens who were formerly enslaved and devoid of Creek blood. *Id.* at ¶¶ 44-50. The Dawes Rolls closed in 1907. *Id.* at ¶ 51.

In 1975, the MCN submitted a draft constitution to the United States Department of the Interior ("DOI") which "(1) stripped individuals on the 1906 Creek Freedmen Rolls and their then-living lineal descendants of their MCN citizenship; and (2) prevented the unborn lineal descendants of individuals who were enrolled on the 1906 Creek Freedmen Rolls from becoming citizens of MCN." *Id.* at ¶ 52. In 1979, the DOI approved the MCN constitution, and the MCN held an election formally adopting the new constitution. *Id.* at ¶¶ 56-57. Under the new constitution, ratified by the DOI, Freedmen descendants were not entitled to MCN citizenship and were not recognized as citizens of the MCN. *Id.* at ¶ 60.

Plaintiffs allege that between 1979 and today eligible Freedmen descendants have been summarily denied citizenship. *Id.* at ¶ 63. Plaintiffs specifically allege that between 1983 and 2003, the MCN Citizenship Board repeatedly denied the applications of two Freedmen descendants who are not parties in this lawsuit, Fred Johnson and Ron Graham. *Id.* at ¶ 64. Mr. Johnson and Mr. Graham appealed their denials to the MCN District Court. In 2006, the MCN District Court found that the Citizenship Board had not followed MCN law mandating that the Board process Mr. Johnson's and Mr. Graham's citizenship applications. *Id.* at ¶ 69. Despite the court order, Plaintiffs contend that the MCN Citizenship Board still refused to process the applications. And, in 2007, the MCN Supreme Court reversed the MCN District Court decision

but did not rule on the validity of the citizenship provisions in the Treaty of 1866. *Id.* at ¶ 70. Plaintiffs do not provide any other examples of Freedmen descendants who were denied citizenship, and Plaintiffs do not allege that they have ever applied for MCN citizenship and been denied.

Plaintiffs argue that Defendants violated the Treaty of 1866 when the DOI approved and the MCN passed the 1979 constitution excluding Freedmen descendants from tribal citizenship. *Id.* at ¶ 73. Plaintiffs further argue that Defendants have continually violated the Treaty of 1866 from 1979 until the current day. Plaintiffs contend that the MCN has violated the treaty by excluding Plaintiffs from elections and other tribal activities. Plaintiffs further contend that federal Defendants have violated the treaty by approving tribal elections and by providing funding for the MCN, despite the exclusion of Plaintiffs. *Id.* at ¶¶ 74-76.

On July 20, 2018, Plaintiffs filed this lawsuit requesting declaratory and injunctive relief providing Plaintiffs and other Freedmen descendants with the full rights and privileges of MCN citizenship. Both federal Defendants and Defendant Floyd have filed Motions to Dismiss, citing numerous grounds for dismissal.

## II. LEGAL STANDARD

Defendants move to dismiss Plaintiffs' Complaint on various grounds. For reasons explained below, the Court finds that Defendant Floyd's request for dismissal on exhaustion grounds is dispositive. As such, the Court will focus on that standard for dismissal. Because the exhaustion of tribal remedies is a matter of judicial comity rather than a jurisdictional bar to suit, motions to dismiss for failure to exhaust trial remedies are considered under Federal Rule of Civil Procedure 12(b)(6). *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (explaining that comity requires tribal exhaustion).

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

Federal Defendants and Defendant Floyd present many arguments as to why this case should be dismissed. However, the Court finds that Defendant Floyd's argument as to Plaintiffs' failure to exhaust their tribal remedies is dispositive. Accordingly, the Court's Memorandum Opinion will address only that issue.

Defendant Floyd argues that this case should be dismissed as Plaintiffs failed to allege that they have exhausted their tribal remedies. In their Complaint, Plaintiffs make the conclusory allegation that they have been denied enrollment in the tribe. Am. Compl., ECF No. 12, ¶¶ 4-6, 8-10. Plaintiffs' denial of enrollment could be based on the mere presence of a "blood status" requirement in the MCN constitution. And, nowhere in their Complaint do Plaintiffs allege that they actually applied for enrollment in the tribe. In their Opposition to Defendant Floyd's Motion to Dismiss, Plaintiffs summarily state that "[b]etween 1979 and the present, Creek Freedmen and their descendants, including Plaintiffs, have applied for citizenship in the MCN." Pls.' Opp'n to Def. Floyd, ECF No. 25, 5. Plaintiffs cannot now amend their Complaint by way of an

5

Opposition to a Motion to Dismiss. *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 165 n.10 (D.D.C. 2014) (explaining that "it is well settled law that a plaintiff cannot amend its complaint by the briefs in opposition to a motion to dismiss"). Moreover, even if the Court were to consider Plaintiffs' Opposition, Plaintiffs do not provide any details about their applications for citizenship such as which Plaintiffs have applied and whether or not Plaintiffs appealed any denials of citizenship. Plaintiffs' conclusory statement, made in an Opposition to a Motion to Dismiss, is insufficient to allege exhaustion of remedies.

Seemingly acknowledging their failure to allege exhaustion, in making their arguments against dismissal, Plaintiffs also do not contend that they actually applied for enrollment in the tribe and were denied. Instead, Plaintiffs make two arguments as to why this case should not be dismissed for failure to exhaust. First, Plaintiffs contend that they were not required to exhaust their tribal remedies because the tribal court does not have jurisdiction over federal Defendants. Second, Plaintiffs contend that exhaustion should be excused because exhaustion of tribal remedies would be futile. The Court will address each argument in turn.

When a tribal court has jurisdiction over a claim, a plaintiff must exhaust tribal remedies prior to bringing suit in federal court. *See Nat'l Farmers Union*, 471 U.S. at 857 (holding that "[u]ntil petitioners have exhausted the remedies available to them in the Tribal Court system, it would be premature for a federal court to consider any relief" (internal citation omitted)). There are multiple reasons that courts require tribal exhaustion. First, tribal exhaustion promotes the "orderly administration of justice." *Id.* at 856-57. Second, tribal exhaustion allows federal courts to obtain tribal "expertise" in tribal matters. *Id.* Third, requiring that plaintiffs first seek remedies through the tribal system furthers the congressional "policy of supporting tribal self-government and self-determination." *Id.*

The Court finds that these first two factors weigh in favor of requiring tribal exhaustion in this case. The orderly administration of justice in the federal court will be served by permitting a full factual record to be developed through the tribal administrative and judicial processes. Moreover, Plaintiffs' pursuit of citizenship through the tribal process will provide the Court with valuable information. On the one hand, exhaustion will provide the tribal administration and courts the opportunity to accept Plaintiffs' citizenship applications, thereby avoiding the need for federal courts to wade into the murky issue of tribal citizenship. On the other hand, if Plaintiffs are denied citizenship, tribal exhaustion will provide the tribal administration and courts with the opportunity to explain precisely why they refuse to grant citizenship. The benefit of tribal expertise in matters of tribal citizenship will assist the federal court in making its subsequent citizenship determination. Additionally, by providing a ground or grounds for denying citizenship, the federal court will better be able to narrow the issues and target its ruling.

The Court similarly finds that the third factor weighs in favor of requiring tribal exhaustion. Requiring tribal exhaustion to promote tribal self-governance is particularly appropriate here, where the issue before the Court concerns tribal membership. A tribe's authority to determine its own membership is an important component of tribal self-governance and independent sovereignty. *See Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 14 (1987) ("encouraging tribal self-government ... reflects the fact that Indian tribes retain attributes of sovereignty over both their members and their territory" (internal quotation marks omitted)); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978) ("A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community."). Because the composition of a tribe's membership is fundamental to its self-governance and sovereignty, federal courts have recognized that questions

of tribal membership should be exhausted before they are brought in federal court. *See, e.g., Jeffredo v. Macarro*, 599 F.3d 913, 921 (9th Cir. 2010) (refusing to consider the plaintiffs' claims for exclusion and eviction from the reservation because the plaintiffs had not exhausted their tribal remedies); *Smith v. Babbitt*, 875 F. supp. 1353, 1366-67 (D. Minn. 1995), *aff'd*, 100 F.3d 556 (8th Cir. 1996) (explaining that, even if the court had jurisdiction over the plaintiffs' claims pertaining to membership, it would not hear them because the plaintiffs had not exhausted their tribal remedies). Because the Court finds that decisions on tribal membership are an important part of self-governance, the Court concludes that Plaintiffs should exhaust their tribal remedies before bringing citizenship claims in federal court.

"There are four recognized exceptions to the general rule that exhaustion of tribal remedies is required: (1) when assertion of tribal jurisdiction is to harass or is in bad faith; (2) when 'the action is patently violative of express jurisdictional prohibitions;' (3) 'where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction;' and, (4) when tribal jurisdiction serves no other purpose than delay." *LECG, LLC v. Seneca Nation of Indians*, 518 F. Supp. 2d 274, 277 (D.D.C. 2007) (citing *Strate v. A-1 Contractors*, 520 U.S. 438, 459 n.14 (1997) (formulating the fourth exception) and *Nat'l Farmers Union*, 471 U.S. at 857 n.21 (setting out the first three exceptions)). Plaintiffs argue that tribal exhaustion should not be required in this case under exceptions two and four. First, Plaintiffs contend that tribal exhaustion should not be required because the tribal courts cannot exercise jurisdiction over the two federal Defendants. Second, Plaintiffs contend that tribal exhaustion should not be required because seeking relief through the MCN's administrative and judicial systems would be futile. The Court disagrees.

8

## A. Tribal Jurisdiction Over Federal Defendants

First, Plaintiffs argue that they were not required to exhaust their tribal remedies because the tribal court does not have jurisdiction over federal Defendants. Plaintiffs are correct that federal Defendants could not be sued in tribal court. However, Plaintiffs have also sued Defendant Floyd, over whom the tribal court does have jurisdiction. And, under the doctrine of tribal exhaustion, the presence of federal Defendants in this lawsuit does not obviate Plaintiffs' obligation to first seek administrative and judicial remedies in tribal forums for redress of their alleged injuries—denial of enrollment in the tribe.

Plaintiffs cite two cases in which courts did not require the exhaustion of tribal remedies due to the presence of federal defendants in the lawsuit. Both are distinguishable.

First, Plaintiffs cite *Vann v. Kempthorne*. 467 F. Supp. 2d 56 (D.D.C. 2006), *overturned on other grounds*, 534 F.3d 741 (D.C. Cir. 2008). In *Vann*, the court was deciding whether or not to allow the plaintiffs leave to amend their complaint in order to add the Cherokee Nation and its officials as defendants. The Cherokee Nation argued that amendment would be futile because the plaintiffs had failed to exhaust their tribal remedies. 467 F. Supp. 2d at 73. The court acknowledged that "a federal court may not entertain a civil action within the jurisdiction of tribal forums until the plaintiff has exhausted his or her available remedies in tribal courts." *Id.* But, the court went on to conclude that because the plaintiffs "asserted a cause of action against the Secretary under the APA which is only cognizable in federal courts" exhaustion was not required as the plaintiffs' "claim against the Secretary [could not] be heard in tribal courts." *Id.*

The Court finds that *Vann* is distinguishable from the case currently before the Court. In *Vann*, at the time that the court was deciding whether or not tribal exhaustion was necessary, the lawsuit was against only a federal defendant. The Cherokee Nation had been granted limited

9

intervention for the purposes of challenging jurisdiction but was not yet included as a defendant. *Id.* at 59-60. As such, at the time of the decision, there were no defendants in the lawsuit against whom tribal courts could exercise jurisdiction. Here, Plaintiffs have sued the chief of the tribe, against whom tribal courts exercise jurisdiction, in addition to federal Defendants. Accordingly, unlike in *Vann*, in this case, there are Defendants against whom Plaintiffs could bring suit in a tribal court.

Additionally, *Vann* is distinguishable from the Court's case based on the nature of relief sought. In *Vann*, the plaintiffs were descendants of Cherokee Freedmen who had been prevented from participating in a 2003 election. The plaintiffs requested a court order declaring the 2003 election invalid and enjoining the Secretary from recognizing the results of elections until the plaintiffs were permitted to vote. *Id.* at 60. Accordingly, the nature of relief requested by the plaintiffs, as set out by the court, was the sort that could be given only by the Secretary, not by a tribal court. Conversely, here, Plaintiffs request, in part, an order declaring that "Creek Freedmen Descendants are Creek citizens." Am. Compl., ECF No. 12, Prayer for Relief. This relief could potentially be granted through the tribal administrative and judicial process if plaintiffs applied for tribal citizenship. Accordingly, unlike in *Vann*, a tribal court would have jurisdiction over Plaintiff's request for relief. For these reasons, the Court is not persuaded that *Vann* is applicable. Finally, the Court notes that *Vann* was decided by a district court and is thus not controlling on this Court.

Plaintiffs also cite *United States v. Yakima Tribal Court*, 806 F.2d 853 (9th Cir. 1986). In *Yakima Tribal Court*, Native American plaintiffs won a restraining order in tribal court preventing federal officials from relocating an irrigation canal on their land. 806 F.2d at 855. The United States then sued in federal court. The district court voided the tribal court's order, finding

that the tribal court lacked jurisdiction to enjoin federal officials from performing their duties. *Id.* The tribal defendants appealed, arguing that the United States should have appealed the tribal court's order to the tribal appellate court prior to bringing suit in federal court. The Ninth Circuit disagreed, finding that "exhaustion was pointless because the tribal court jurisdiction was clearly foreclosed by the sovereign immunity of the United States." *Id.* at 860-61.

The Court finds that *Yakima Tribal Court* is not persuasive here. In *Yakima Tribal Court*, the Ninth Circuit found that tribal exhaustion was not necessary because the tribal courts could not provide the Native American plaintiffs with the relief they requested as, under the doctrine of sovereign immunity, the tribal courts did not have jurisdiction to order the United States to relocate the irrigation canal. As this was the only relief requested by the plaintiffs, tribal exhaustion could not have provided the plaintiffs with their requested relief. Conversely, here, Plaintiffs request, in part, an order declaring that "Creek Freedmen Descendants are Creek citizens." Am. Compl., ECF No. 12, Prayer for Relief. Tribal courts have jurisdiction over matters of tribal citizenship. As such, tribal exhaustion through the proper administrative and judicial channels has the potential to afford Plaintiffs their requested relief. Accordingly, *Yakima Tribal Court* is not persuasive.

The parties did not cite, and the Court could not find, any decision within this Circuit which directly addressed the question of whether or not a plaintiff must exhaust tribal remedies when the plaintiff sues both tribal and federal defendants. However, the Court is persuaded by cases in other circuits concluding that exhaustion is required.

In *Smith v. Moffett*, 947 F.2d 442 (10th Cir. 1991), the Native American plaintiff sued various federal officials, tribal officials, and private individuals for violations of his civil rights. The district court dismissed the case. But, the Tenth Circuit vacated and remanded because "the

11

record fail[ed] to disclose whether [the plaintiff] exhausted his tribal remedies." 947 F.2d at 443. The court explained that, based on concerns of comity and tribal sovereignty, the tribal courts should have had the opportunity "to make an initial determination of tribal jurisdiction over matters arising on Indian reservations." *Id.* at 144. The court went on to state that "the fact that some of the parties in [the plaintiff's] case are non-Indians is immaterial to this analysis." *Id.*

Plaintiffs contend that this case is not instructive as "the federal officers sued were determined to be subject to tribal jurisdiction and thus exhaustion was appropriate." Pls.' Opp'n to Def. Floyd, ECF No. 25, 20. But, the focus of the court's analysis was not on whether the tribal court had jurisdiction over the specific *defendants* named in the plaintiff's federal court lawsuit. Instead, the court's focus was on whether or not the tribal court had jurisdiction over the plaintiff's *claims* brought in federal court. *See Id.* at 443 ("[b]ecause the *claims* not necessarily barred by these immunities may have arisen on the reservation…") (emphasis added), ("…the *events underlying [the plaintiff's] claims* occurred almost exclusively on a Navajo reservation.") (emphasis added), 444 ("… federal courts have acknowledged the need to allow tribal courts to make an initial determination of tribal jurisdiction *over matters arising on Indian reservations*.") (emphasis added).

In the case currently before the Court, the crux of Plaintiff's Complaint is the issue of tribal citizenship. Focusing on the nature of Plaintiffs' claims in this case, the Court concludes that issues of tribal citizenship are of the type which should first be decided through the tribal administrative and judicial process, regardless of whom Plaintiff has sued in federal court.

The Court is also persuaded by *Middlemist v. Secretary of the United States Department of the Interior*, 824 F. Supp. 940 (D. Mont. 1993), *aff'd*, 19 F.3d 1318 (9th Cir. 1994). In *Middlemist*, the plaintiffs filed suit against tribal officials alleging the invalidity of a tribal

12

ordinance which allowed the tribe to exercise regulatory jurisdiction over activities of non-members within the reservation though the requirement of certain permits. Plaintiffs also sued federal officials for their role in approving and funding the tribal ordinance. 824 F. Supp. at 942. The plaintiffs had not applied for a permit, or otherwise been rejected for a permit, as was required under the ordinance. The court dismissed the case without prejudice pending exhaustion of tribal remedies. *Id.* at 947.

The *Middlemist* plaintiffs argued that exhaustion of tribal remedies was impossible because the tribal court lacked jurisdiction over the federal defendants. *Id.* at 946-47. The plaintiffs went on to explain that they could not comply with the exhaustion requirement because they could not file an identical case in tribal court. *Id.* But, the court determined that the plaintiffs had "misconstrued the exhaustion requirement." *Id.* at 946. The court explained that "[c]ompliance with the exhaustion requirement … does not demand the impossible of Plaintiffs as they suggest. Plaintiffs are not required to file a case in Tribal Court which includes the Federal Defendants. Plaintiffs may seek such relief in Tribal Court as is possible under the law and, once that is accomplished, may seek further relief in this court." *Id.* The court found that the issues concerning the federal defendants in the federal court case "[were] the same basic issues underlying the rest of the action and could be presented in Tribal Court without the Federal Defendants." *Id.* As such, the plaintiffs could sue the tribal defendants in tribal court, arguing that the ordinance was invalid. The tribal court's decision on the validity of the ordinance would be dispositive of the plaintiffs' claims against the federal defendants for approving and funding the ordinance. "Therefore, the necessary record could be developed in Tribal Court without the presence of the Federal Defendants." *Id.* at 947.

As in *Middlemist*, Plaintiffs' claims in this case can be brought in tribal court without federal Defendants. The crux of Plaintiffs' Complaint is that they should be granted tribal citizenship. Plaintiffs can apply for citizenship, and if denied, sue the non-federal defendants in tribal court. The validity of the citizenship decision would be dispositive of Plaintiffs' claims against federal Defendants for approving elections and providing funds for the tribe, to the exclusion of Plaintiffs. Even absent the presence of federal Defendants, the tribal court would be able to fully develop the necessary record which would aid the federal court in its subsequent decision.

Similarly, the Court finds instructive *Hall v. Babbitt*, 208 F.3d 218 (8th Cir. 2000) (per curiam). In *Hall*, a Native American plaintiff sued tribal and federal officials, arguing that the tribal chairman had misappropriated money set aside by federal statute to compensate Native Americans for the taking of their land. 208 F.3d at 218. The district court dismissed the action without prejudice to allow the tribal court to decide the plaintiff's claims in the first instance. *Id.* The Eighth Circuit affirmed. The court noted that, while the plaintiff had sued a federal defendant, the "complaint centers on an intra-tribal dispute." *Id.* As such, the court explained that the plaintiff "should be required to exhaust her tribal court remedies and that the tribal court should have a full opportunity to determine its own jurisdiction" *Id.*

Here, as in *Hall*, Plaintiffs have named federal Defendants in their district court lawsuit. But, Plaintiffs' Complaint "centers on an intra-tribal dispute"—whether or not the decedents of Freedmen should be granted tribal citizenship. *Id.* Because the dispute is intra-tribal in nature, and the role of the federal Defendants is ancillary in providing approval and funding for tribal actions, the Court finds that the tribal administration and judiciary should have a full opportunity to consider Plaintiffs' claims prior to the federal court.

14

A similar result occurred in *Smith v. Babbitt*, 875 F. Supp. 1353, 1367 (D. Minn. 1995), *aff'd*, 100 F.3d 556 (8th Cir. 1996). In *Smith*, Native American plaintiffs sued tribal and federal officials, alleging that proceeds from tribal gaming had been given to unqualified "members" of the tribe and withheld from qualified members of the tribe. 875 F. Supp. at 1356. The court dismissed the plaintiffs' claims and explained that the plaintiffs had failed to exhaust their tribal court remedies. The plaintiffs had filed suit in tribal court, but that suit was still pending when the plaintiffs also brought suit in federal court. The court explained that, even though the federal defendants in the district court suit were not party to the plaintiffs' tribal court suit, the plaintiffs' "tribal court action [was] premised on the same conduct and membership determinations as the underlying claims in [the federal court] proceeding." *Id.* at 1367. As such, the court required dismissal of the plaintiffs' federal lawsuit pending exhaustion of tribal remedies.

Plaintiffs argue that *Smith* is unhelpful because exhaustion was discussed only in dicta, the plaintiffs had already filed a suit in tribal court seeking similar relief, and the court did not discuss the possible lack of jurisdiction against the federal defendants. Pls.' Opp'n to Def. Floyd, ECF No. 25, 20 n.4. Even though the issue of exhaustion was discussed in dicta, the Court still finds the discussion in *Smith* to be instructive. The *Smith* court made clear that even if it had found that it had subject matter, the defendants' motion to dismiss "would nonetheless be granted because the Plaintiffs have failed to exhaust their tribal court remedies." 875 F. Supp. at 1366. Additionally, while the plaintiffs in *Smith* had a pending tribal court suit, unlike Plaintiffs here, Plaintiffs fail to explain why the presence of a pending suit in tribal court would be anything but a distinction without a difference. See *Crawford v. Genuine Parts Co., Inc.*, 947 F.2d 1405, 1407 (9th Cir. 1991) (explaining that "[w]hether proceedings are actually pending in the appropriate tribal court is irrelevant"). Finally, while the *Smith* court did not directly address

the lack of jurisdiction against the federal defendants, the decision remains applicable to the facts currently before the Court. In *Smith*, what mattered was that, even if the parties differed, the issue before the tribal court was "premised on the same conduct and membership determinations as the underlying claims in [the federal court] proceeding." 875 F. Supp. at 1367. Similarly, here, Plaintiffs' request for citizenship through the tribal administrative and judicial process would be premised on the same conduct and membership determinations as the claims in this proceeding. Accordingly, *Smith* is instructive as to why tribal exhaustion should be required in this case.

Plaintiffs appear to misunderstand the nature of the tribal exhaustion requirement. The question is not whether Plaintiffs would be able to file this exact lawsuit in tribal court. Instead, the question is whether the tribal administrative and judicial process would be able to grant Plaintiffs the relief which they request. As Plaintiffs request citizenship, the exhaustion of tribal remedies has the potential to provide Plaintiffs with the requested relief. Exhibit 3, ECF No. 21-4, Tit. 7 (providing a written procedure for applying for citizenship and appealing adverse determinations through the tribal court). If Plaintiffs fail to secure their requested relief, they may refile their lawsuit in federal court against both the tribal and federal Defendants. *See Tillett v. Lujan*, 931 F.2d 636, 640-41 (10th Cir. 1991) (requiring exhaustion in a case against tribal and federal defendants and noting that tribal exhaustion "does not preclude [the plaintiff] from thereafter bringing a suit in federal court"). In reviewing Plaintiffs' renewed claims, the federal court will have the benefit of a developed factual record and the expertise of tribal bodies on issues of tribal membership. Accordingly, the Court concludes that Plaintiffs are required to exhaustion their tribal remedies despite the tribal court's lack of jurisdiction over federal Defendants.

## B. Futility of Tribal Exhaustion

Second, Plaintiffs argue that, even if tribal exhaustion were required, exhaustion should be excused as it would be futile. According to Plaintiffs, even if they had applied for citizenship through the tribal administrative and judicial process, they would have been denied. However, the Court finds that Plaintiffs have not alleged sufficient facts to establish that their applications for citizenship would be futile. Accordingly, the exhaustion requirement is not excused.

Exhaustion of tribal remedies is not required where exhaustion would be futile. *See Norton v. Ute Indian Tribe of Uintah and Ouray Reservation*, 862 F.3d 1236, 1243 (10th Cir. 2017). In order to invoke an exception to the tribal exhaustion doctrine, the party seeking the exception must make a "substantial showing of eligibility." *Id.* (internal quotations omitted). The United States Circuit Court for the District of Columbia Circuit ("D.C. Circuit") has not interpreted the futility exception in the context of tribal exhaustion. But, the D.C. Circuit has interpreted the futility exception in the context of various other exhaustion requirements. "The general rule in this circuit is that the exhaustion requirement 'may be waived in only the most exceptional circumstances.'" *Commc'ns Workers of America v. American Tel. and Tel. Co.*, 40 F.3d 426, 432 (D.C. Cir. 1994) (quoting *Peter Kiewit Sons' Co. v. United States Army Corps of Eng'rs*, 714 F.2d 163, 168-69 (D.C. Cir. 1983)). The D.C. Circuit has gone on to explain that "'[t]he futility exception is … quite restricted'" and is applied only when exhaustion "is 'clearly useless.'" *Id.* (quoting *Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986)).

Plaintiffs contend that exhaustion would be futile based on the experiences of two Freedmen descendants, Fred Johnson and Ron Graham. Am. Compl., ECF No. 12, ¶¶ 64-71. Between 1983 and 2003, Plaintiffs contend that the MCN Citizenship Board repeatedly denied

17

Mr. Johnson's and Mr. Graham's citizenship applications. *Id.* at ¶ 65. In 2004, Mr. Johnson and Mr. Graham litigated the issue of citizenship before the MCN District Court. *Id.* at ¶ 64; *see also* Exhibit B, ECF No. 25-1 (MCN District Court decision). In tribal court, Mr. Johnson and Mr. Graham argued that the MCN Citizenship Board acted arbitrarily and capriciously and that all Freedmen descendants were eligible for citizenship pursuant to the Treaty of 1866, the MCN Constitution, and the MCN Citizenship Code. *Id.* at ¶¶ 66-67. In 2006, the MCN District Court issued a decision. The court did not reach the plaintiffs' substantive claims, instead finding that the Citizenship Board had not followed MCN law which required the Citizenship Board to process the plaintiffs' citizenship applications and the applications of other Freedmen descendants. *Id.* at ¶ 69. However, Plaintiffs allege that the Citizenship Board refused to comply with the district court order to process Mr. Johnson's and Mr. Graham's citizenship applications. *Id.* at ¶ 70. And in 2007, the MCN Supreme Court reversed the district court's decision and refused to rule on the applicability of the citizenship provisions of the Treaty of 1866. *Id.* Instead, the MCN Supreme Court cursorily concluded that there was "no evidence that the Citizenship Board acted arbitrarily and capriciously." Exhibit C, ECF No. 25-1 (MCN Supreme Court decision).

Based on Mr. Johnson's and Mr. Graham's experiences with the tribal administrative and judicial citizenship process, Plaintiffs argue that it would be futile for them to apply for citizenship. Plaintiffs contend that it is clear from the face of their pleadings that relief from the MCN Citizenship Board or the tribal courts is at best "hypothetical." Pls.' Opp'n to Def. Floyd, ECF No. 25, 22.

The Court finds that Plaintiffs' anecdotal evidence of two other Freedmen descendants, not parties to this lawsuit, who applied for and were denied citizenship over a decade ago is

18

insufficient to establish futility. The MCN Citizenship Board, created by the tribal constitution, is tasked with making citizenship determinations. Exhibit 2, ECF No. 21-3, Art. III, §§ 1-4. Additionally, the tribal code contains an explicit, written procedure for applying for citizenship and appealing adverse determinations through the tribal courts. Exhibit 3, ECF No. 21-4, Tit. 7. The Court finds the presence of a detailed written procedure for applying for citizenship and for appealing adverse determinations to be evidence that a tribal remedy exists and is more than hypothetical.

Failed attempts to obtain a grant of citizenship from the MCN Citizenship Board as well as refusals by the tribal courts to reconsider adverse determinations may show that tribal exhaustion would be futile. But, Plaintiffs have failed to produce sufficient evidence that a remedy through the tribal process would be illusory in this case. Plaintiffs have cited only two other Freedmen descendants who were denied citizenship. These two Freedmen descendants are not parties in this case, and it is not clear how similarly situated the two men are to Plaintiffs. Additionally, the two Freedmen descendants were denied citizenship through the tribal process over a decade ago. Plaintiffs present no evidence that the same result would occur if they applied for citizenship today. Moreover, in assessing the claims of the two Freedmen descendants, the tribal courts never actually considered their substantive claims. Accordingly, the past decisions of the tribal District Court and the tribal Supreme Court cited by Plaintiff are not dispositive of Plaintiffs' citizenship claims. For these reasons, Plaintiffs have presented insufficient evidence to establish that the exhaustion of tribal remedies would be futile if Plaintiffs applied for citizenship today. *See Suarez v. Colvin*, 140 F. Supp. 3d 94, 101 (D.D.C. 2015) (explaining that the D.C. Circuit has erected an "extraordinarily high hurdle … for plaintiffs who wish to have the exhaustion requirement excused" based on futility).

The Court has already determined that Plaintiffs were required to exhaust their tribal remedies. Plaintiffs argue that, if exhaustion is required, it should be excused as exhaustion would be futile. However, Plaintiffs have failed to produce sufficient evidence that applying for citizenship through the MCN Board of Citizenship, and appealing any adverse decisions through the tribal courts, would be futile. Accordingly, Plaintiffs' failure to exhaust is not excused. And, the Court will DISMISS WITHOUT PRJUDICE Plaintiffs' Complaint, pending exhaustion of tribal remedies. *See Hall*, 208 F.3d at 219 (affirming dismissal without prejudice of the plaintiff's action against tribal and federal officials pending exhaustion of tribal remedies); *see also Middlemist*, 824 F. Supp. at 947, *aff'd*, 19 F.3d 1318 (dismissing without prejudice the plaintiff's action against tribal and federal officials pending the exhaustion of tribal remedies).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Floyd's [21] Motion to Dismiss and DENIES WITHOUT PREJUDICE federal Defendants' [21-1] Motion to Dismiss. Plaintiffs were required to exhaustion their tribal remedies prior to bringing suit in this Court. Plaintiffs have not established that exhaustion should be excused due to the presence of federal Defendants in this lawsuit or due to futility. Accordingly, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's Complaint pending the exhaustion of tribal remedies. Because the Court grants dismissal on exhaustion grounds, it need not consider at this time the other arguments made in Defendant Floyd's Motion or the arguments made in federal Defendants' Motion.

An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge